[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12079
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-20627-KMM

PDQ COOLIDGE FORMAD, LLC,

Plaintiff - Counter
Defendant - Appellant,

versus

LANDMARK AMERICAN INSURANCE
COMPANY,

Defendant - Counter
Claimant - Appellee,

FANNIE MAE,
Fannie Mae,

Intervenor - Counter
Claimant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 19, 2014)

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

PDQ Coolidge Formad, LLC ("PDQ") appeals from the district court's order granting summary judgment in favor of Landmark American Insurance Company ("Landmark") in PDQ's suit alleging that Landmark breached an insurance contract by denying a claim for property damage. The district court concluded that PDQ had not provided Landmark with timely notice of the damage underlying the claim, that Landmark was prejudiced by PDQ's failure to provide timely notice, and that Landmark did not breach the contract by denying the claim. On appeal, PDQ argues that the district court erred in granting summary judgment because: (1) whether PDQ provided timely notice is a question of fact for the jury; (2) PDQ's evidence created a question of fact even if it is "self-serving"; (3) the term "prompt notice" in the contract is ambiguous; and (4) whether Landmark was prejudiced is a question of fact. After careful review, we affirm.

The undisputed facts are these. PDQ owns an apartment complex known as Washington Shores, located in Orlando, Florida. The Washington Shores property (the "Property") allegedly suffered damage as a result of Tropical Storm Fay on or about August 20, 2008, during which time the Property was insured under a commercial policy issued by Landmark (the "Policy"). The Policy provided

2

coverage for direct physical loss caused by windstorm, subject to certain conditions, exclusions or limitations.  The Policy included the following provision:

3. Duties in The Event of Loss Or Damage

a. You must see that the following are done in the event of loss or Damage to the covered property:

. . .

(2) Give us <u>prompt notice</u> of the loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

. . . .

(Emphasis added).  PDQ submitted claims with Landmark for other locations it owned immediately following Tropical Storm Fay.  In February 2009, Landmark received notification from PDQ that PDQ intended to submit a claim for the Washington Shores property relating to alleged damage from Tropical Storm Fay. Landmark's structural engineer, Milton Engineering Consultants, P.A. ("MEC"), thereafter conducted inspections of the Property.  MEC then drafted two reports, in June and August 2009, which determined that none of the roof damage on the Property could reasonably be attributed to wind forces generated during Tropical Storm Fay.  Landmark denied PDQ's claims, concluding, among other things, that PDQ had failed to submit "its claim for damages to the Washington Shores property in a timely manner as required by the terms of the Policy."

3

We review a district court's order granting summary judgment de novo, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1374 (11th Cir. 1996). A mere "scintilla" of evidence supporting the non-movant's position will not suffice, nor will a non-movant's conclusory allegations without specific supporting facts; instead, there must be a sufficient showing that the jury could reasonably find for that party. Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1162 (11th Cir. 2006); Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).

In this diversity case, because the insurance contract was negotiated in Florida, Florida law applies. See State Farm Mut. Auto. Ins. Co. v. Duckworth, 648 F.3d 1216, 1218 (11th Cir. 2011) (noting that Florida courts apply the law of the jurisdiction in which the contract was entered into). Under Florida law, the purpose of policy provisions requiring prompt notice "is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." Laster v. United States

Fidelity & Guaranty Co., 293 So. 2d 83, 86 (Fla. 3d DCA 1974) (quotation omitted). Policy provisions that require "timely notice" or "prompt notice" are interpreted identically, and mean that notice must be given with "reasonable dispatch and within a reasonable time [i]n view of all the facts and circumstances of the particular case." Id. (quoting Employers Casualty Co. v. Vargas, 159 So. 2d 875, 877 (Fla. 2d DCA 1964)); American Fire & Cas. Co. v. Collura, 163 So. 2d 784, 792 (Fla. 2d DCA 1964). In Florida, an insured's failure to provide "timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy." Ideal Mut. Ins. Co. v. Waldrep, 400 So. 2d 782, 785 (Fla. 3d DCA 1981). Thus, Florida courts have ruled on summary judgment that an insured's delayed notice to an insurer did not constitute prompt notice under the policy when the factual record did not support an argument that the delay was reasonable. See Kroener v. Florida Ins. Guar. Ass'n, 63 So. 3d 914, 916 (Fla. 4th DCA 2011); Midland Nat'l Ins. Co. v. Watson, 188 So. 2d 403, 405 (Fla. 3d DCA 1966); Morton v. Indem. Ins. Co. of N. Am., 137 So. 2d 618, 620 (Fla. 2d DCA 1962), overruled on other grounds by Collura, 163 So. 2d 784.

Here, the district court did not err in finding no genuine dispute of material fact concerning PDQ's lack of prompt notice. For starters, we disagree with PDQ's claim that the phrase "prompt notice" in the Policy is ambiguous. Florida courts have found no ambiguity in this phrase, readily construing it (and similar

5

phrases) to mean that notice must be given "with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case." See Collura, 163 So. 2d at 792 (noting that the "exact phraseology" of policy provisions requiring notice to be "'immediate,' 'prompt,' forthwith,' 'as soon as practicable,' and 'within a reasonable time'" matters little, and they all "call for notice to be given with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of each particular case") (emphasis omitted).

Moreover, we find no dispute of fact concerning when Landmark was notified by PDQ about damage to the Washington Shores property. As the record shows, the evidence first indicating that PDQ had given notice to Landmark about damage to the Property is found in a letter dated February 2009, approximately six months after Tropical Storm Fay. As for PDQ's argument that the district court erred in requiring notice to be written, we disagree. The record merely reveals that the first evidence of notice happened to occur in writing in February 2009; there is no evidence that Landmark was notified in writing, orally, or otherwise prior to that date. Thus, there is no record evidence to contradict the conclusion that Landmark was given notice about the damage to the Property in February 2009.

PDQ attempts to create an issue of fact about the timing of the notice with the affidavit of Tammie Smith, the testimony of Jaime Yuken and a new argument that "there was considerable confusion." However, the Smith affidavit contains

6

only a conclusory statement that "Landmark knew of the damages and claims for the Washington Shores Property prior to February 18th, 2009 and at or about the same time we were adjusting and working on claims for the other properties that are in within [sic] a very close physical proximity to the Washington Shores Property." She provides no specifics or other details concerning when notice was given. Similarly, deposition testimony of Jaime Yuken, the corporate representative of PDQ, said that "he believed that PDQ COOLIDGE had submitted its claim timely and in line with policy conditions." But, again, Yuken does not offer an actual date of when he believes such notice was given. As for the letter that it claims revealed "confusion," it also fails to provide an actual date prior to February 2009. We have consistently held that a party's conclusory allegations are insufficient to enable the non-movant to withstand summary judgment. See Leigh, 212 F.3d at 1217; Holifield, 115 F.3d at 1564 n.6; Earley, 907 F.2d at 1081. The district court did not err in disregarding these conclusory assertions, and PDQ's claim that the court ignored them because they were "self-serving" has no merit.

Nor do we find any error in the district court's conclusion that this six-month delay was not "prompt." To begin with, Florida cases involving notice provisions similar to the one here have held that a six-month or less period is considered late notice. See Morton, 137 So. 2d at 620 (six and one-half months); Ideal, 400 So. 2d at 783 (six weeks); Deese v. Hartford Accident & Indemnity Co., 205 So. 2d 328,

329 (Fla. 1st DCA 1967) (four weeks); compare Tiedtke v. Fidelity & Cas. Co. of NY, 222 So. 2d 206 (Fla. 1969), quashing Fidelity & Cas. Co. of NY v. Tiedtke, 207 So. 2d 40 (Fla. 4th DCA 1968) (four months).  Not only did PDQ fail to give notice about damage to the Property for about six months, it is undisputed that PDQ promptly provided notice to Landmark for its claims and losses to other nearby property also damaged by Tropical Storm Fay.  Yet PDQ does not explain why it gave notice for the other properties and failed to mention Washington Shores.  The record also indicates that PDQ was aware of the damage at the Property, because it supposedly tarped some of the roofs at the Property right after the storm and PDQ's property manager Ellen Darland testified that she had received immediate complaints from the Property's tenants about roof leaks.  On this record -- which reveals that PDQ knew about the damage to the Property and knew how to promptly notify Landmark about damage to other properties but nevertheless failed to provide notice concerning the Property for approximately six months -- we conclude the district court did not err in concluding that no reasonable interpretation of the record created a genuine dispute of material fact concerning whether the notice concerning the Property was timely.

Finally, we reject PDQ's claim that there was a dispute of fact about the prejudice Landmark suffered from PDQ's six-month delay in notice.  In Florida, a failure to give timely notice creates a rebuttable presumption of prejudice to the

insurer.  Bankers Ins. Co. v. Macias, 475 So. 2d 1216, 1217-18 (Fla. 1985).  The burden is "on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts."  Id. at 1218; Stark v. State Farm Fla. Ins. Co., 95 So. 3d 285, 288 (Fla. 4th DCA 2012).  Prejudice is properly resolved on summary judgment where an insured fails to present evidence sufficient to rebut the presumption.  1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Property Ins. Co., 112 So. 3d 541 (Fla. 3d DCA 2013); Soronson v. State Farm Fla. Ins. Co., 96 So. 3d 949, 953 (Fla. 4th DCA 2012); City Mgmt. Grp. Corp. v. Am. Reliance Ins. Co., 528 So. 2d 1299, 1300 (Fla. 3d DCA 1988).

Here, PDQ has not meet its burden to rebut the presumption of prejudice. Although Landmark's engineer, MEC, concluded that the damage at the time of the inspections was not a result of Tropical Storm Fay, there is no evidence showing that an earlier inspection would not have impacted the investigation.  For instance, PDQ offers nothing to address (a) whether better conclusions could have been drawn without the delay, (b) whether those conclusions could have been drawn more easily, or (c) whether the repairs to the affected areas that took place in the interim would complicate an evaluation of the extent of the damage or PDQ's efforts to mitigate its damages.  Nor does PDQ proffer anything to indicate that the condition of the Property was in the same condition as it was right after the storm.  In fact, PDQ has indicated that the damages got worse over time.

9

Further, PDQ's reliance on "two (2) detailed estimates, affidavits and sworn testimony regarding the loss," dated February 10 and June 12, 2009, do not rebut any presumption of prejudice, since this evidence describes all of the damages, regardless of cause, at the Property and are conclusory. Hope v. Citizens Property Ins. Co., 114 So. 3d 457, 460 (Fla. 3d DCA 2013) (finding that the insured's submission of a homeowner's affidavit, roofer's repair estimate and public adjuster's report listing various repairs necessary to the structure were conclusory and did not overcome presumption of prejudice to Citizens). But even if PDQ had an affidavit saying that "the late notice did not prejudice Landmark" that would not be enough to overcome the presumption of prejudice. See id.; 1500 Coral Towers, 112 So. 3d at 545 (affirming summary judgment for Citizens where "[t]he closest Coral Towers comes is a conclusory statement by one of its engineers that, in his opinion, the late notice did not prejudice Citizens"); Kramer v. State Farm Fla. Ins. Co., 96 So. 3d 303 (Fla. 4th DCA 2012) (affirming summary judgment where the presumption of prejudice was not rebutted by structural engineer's affidavit stating that roof damage was equally likely to have resulted from wind damage or foot traffic). Finally, we reject PDQ's claim that it had no opportunity to rebut prejudice in the district court, since Landmark raised the issue in its summary judgment motion, and PDQ expressly addressed prejudice in its response.[1]

---

[1] We also DENY PDQ's motion to take judicial notice. Among other things, we've repeatedly

10

**AFFIRMED.**

---

held that we will not consider an issue not raised in the district court and raised for the first time on appeal.  See Access Now, Inc. v. Sw. Airlines, Co., 385 F.3d 1324, 1331 (11th Cir. 2004).